## COLLINS *v.* UNITED STATES.

ERROR FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 821. Submitted October 19, 1893. — Decided October 30, 1893.

On the trial of a person indicted for murder, it appeared that the deceased in a drunken fit assaulted the brother of the defendant, that the defendant, who was dancing, left the dance, went in search of his pistol, returned with it and shot the offender, and that after going away, he returned a few minutes later, put the pistol close to the head of the deceased and fired a second time. The court below instructed the jury, in substance, that, if the defendant in a moment of passion, aroused by the wrongful treatment of his brother, and without any previous preparation, did the shooting, the offence would be manslaughter; but if he prepared himself to kill, and had a previous purpose to do so, then the mere fact of passion would not reduce the crime below murder. *Held*, that there was no error in this instruction.

THE plaintiff in error was convicted in the Circuit Court of the United States for the Western District of Arkansas of the crime of murder, and sentenced to be hung. The circumstances of the homicide were substantially these: On the evening of July 17, 1891, there was a dance at the Valley House in Fort Gibson. A half brother of the defendant, named Walter Shannon, a boy about twelve years of age, was tending a soda-pop or confectionery stand in the room where the dance was going on. The deceased, Randle Lovely, who was quite drunk, took a bottle of soda-pop, drank it, and refused to pay for it. Some words passed between him and the boy, which resulted in his slapping the boy with his open hand. The boy turned to run

away, and the deceased followed. Seeing the controversy, the defendant left his place in the dance, went after his pistol, took it out of the pocket of one Turner, with whom he had left it, came near to the deceased, and without a word shot him. The wounded man sank to the floor. The defendant turned and walked away, but in a few minutes returned, and, seeing Lovely lying on the floor, said : " I have pretty near killed him ; I might as well finish him," put his pistol close to the head of the deceased and fired a second time. After that he turned around and walked off, and fled from Fort Gibson. The deceased was about thirty years of age, and the defendant eighteen.

The burden of the defence was that the homicide was manslaughter rather than murder. In the course of his charge, the judge instructed the jury as follows : " In order to give the party the right to claim that his act is manslaughter there must be a condition of hasty passion. That is one condition that alone cannot reduce the man's crime, because there is passion. It is sometimes hasty when a man slays in the most murderous way ; there is a brutal passion, a wicked passion ; the man's mind is abnormal ; it is not natural ; it is not in that placid condition where he contemplates the rights of others and observes these rights, but it is in a condition of fury. He frequently creates that condition by the use of stimulants, nerves himself up for the very purpose. When he does it, it won't do to say that the mind is in a condition of passion that will put a party in such an attitude that he is guilty alone of manslaughter. No ; that act of passion must generate from some wrongful act being done by the party who is slain at the time that he does it, or so soon thereafter as that there was no time for the passion of the party to cool. That is what it means, and the offence is mitigated because of the wrongful act of the other party, who is committing that act at the time of slaying. Now, as I have already told you substantially, if the other party is doing a wrongful act at the time he is slain — and when I speak of a wrongful act I speak of one that would not give the party the right to defend to the death, and the slapping of the boy in this case, or the con-

troversy he had with his brother, would not do that, because
if violence of that character was done the defendant it wouldn't
give him the right to slay, nor would it give him the right to
slay him when it was used on his brother, though he has the
same right as affecting his brother as affecting himself, because
he has a right to defend his brother in any case where his life
is imperilled, and use the same violence as he would in his
own case. But suppose that during the time that condition
existed, and the doing of the act has a tendency to infuriate
the mind of the party, if he then, without previous prepara-
tion, or without preparation at that time, should take the life
of the deceased, that would be manslaughter."

To this instruction the defendant excepted, and this excep-
tion is the only matter here relied upon by the plaintiff in
error.

*Mr. A. H. Garland*, for plaintiff in error, cited *State* v.
*Fitzsimmons*, 63 Iowa, 656 ; *State* v. *Abarr*, 39 Iowa, 185 ;
*Irley* v. *State*, 32 Georgia, 496 ; *State* v. *Davis*, 1 Houst. Cr.
Cas. (Del.) 13 ; *Stewart* v. *State*, 78 Alabama, 436.

*Mr. Solicitor General* for defendants in error.

. MR. JUSTICE BREWER, after stating the case, delivered th⌐
opinion of the court.

The facts of this case presented a proper question for the
consideration of the jury, as to whether the homicide was
murder or manslaughter. The instruction challenged did not,
when taken in connection with the other parts of the charge,
present the law inaccurately ; for theretofore the judge had
charged, substantially, that premeditation was necessary to
the crime of murder ; and also, quoting from some authority,
that "voluntary manslaughter is the unlawful killing of an-
other without malice, upon sudden quarrel, or in the heat of
passion ; " and, further, that "the law kindly appreciating
the infirmities of human nature, extentuates the offence com-
mitted, and mercifully hesitates to put on the same footing

Statement of the Case.

of guilt the cool, deliberate act, and the result of hasty passion." In the language complained of, he goes on to say that mere passion does not reduce the crime from murder to manslaughter, for it may be a passion voluntarily created for the purpose of homicide; but it must spring from some wrongful act of the party slain at the time of the homicide, or so near theretofore as to give no time for passion to cool. Applying the rule to the facts in evidence, the instruction was that, if the defendant in a moment of passion, aroused by the wrongful treatment of his brother and without any previous preparation, did the shooting, the offence would be manslaughter and not murder; but as is immediately thereafter added, if he prepared himself to kill, and had a previous purpose to do so, then the mere fact of passion would not reduce the crime below murder.

We see nothing in this of which the defendant can properly complain, and as this is the only matter called to our attention, the judgment of the Circuit Court must be

*Affirmed.*